IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Francine Goodman, ) | |
| ) | Civil Action No. 8:06-2605-RBH-BHH |
| Plaintiff, ) | |
| ) | |
| ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| ) | |
| vs. ) | |
| ) | |
| Family Dollar Stores, Inc., and Doris ) | |
| Koester, ) | |
| ) | |
| Defendants. ) | |

This matter is before the Court on the defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. [Doc. 116.] The plaintiff has pled a claim for discrimination pursuant to Title VII of the Civil Rights Act of 1964, as amended. The plaintiff alleges that the defendant Family Dollar Stores, Inc. ("Family Dollar") and Doris Koester discriminated against her on account of her race, when they terminated her employment. In an Order dated April 20, 2007, defendant Koester was dismissed from the case. [Doc. 48.]

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

**FACTUAL BACKGROUND**

The plaintiff began her employment with the defendant on October 10, 2001, as a cashier, but was later promoted to Store Manager. At all times relevant to this case, the plaintiff worked for the defendant as a Store Manager in Greenwood, South Carolina at

Store #4818. (Pl. Dep. at 19.) On August 1, 2005, the defendant assigned Koester to manage the district in which the plaintiff worked – District 42.

The defendant contends that, in August and November 2005, Koester counseled the plaintiff orally and in writing regarding violations of various operating policies, of which the plaintiff was or should have been aware. (Koester Decl. at ¶ 9; Pl. Dep. at 133-34, 156, 170-71, 194 and Ex. 4.) Koester specifically warned the plaintiff that one more violation of any kind would result in the plaintiff's discharge. (Koester Decl. at ¶ 17; Pl. Dep. at 170-71.) It is undisputed that, in spite of that warning, the plaintiff later held merchandise for her personal purchase in violation of the defendant's policies. (Koester Decl. at ¶ 19; Pl. Dep. at 87, 89, 101-02.)

As a result, the plaintiff's employment was terminated on December 13, 2005.

## **APPLICABLE LAW**

Federal Rule of Civil Procedure 56(c) states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has

been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Furthermore, Rule 56(e) provides in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e). Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must produce existence of every element essential to his action that he bears the burden of adducing at a trial on the merits.

## **DISCUSSION**

The plaintiff claims that her employment with the defendant was terminated on December 13, 2005 not for any violations of company policy but because of her race. The plaintiff states that the defendant's reasons for the termination of her employment are false and that the defendants had different expectations for white and black employees and that other black managers had been replaced with white ones, prior to the termination of the plaintiff's employment. The plaintiff, however, has failed to produce evidence which creates a genuine issue of fact as to any of her claims.

As the Fourth Circuit has explained, since *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003), a Title VII plaintiff may "avert summary judgment . . . through two avenues of proof." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005) (quoting *Hill v. Lockheed Martin Logistics Management, Inc.*, 354 F.3d 277, 284 (4th Cir. 2004) (emphasis added). A plaintiff can survive a motion for summary judgment by presenting direct or circumstantial evidence that raises a genuine issue of material fact as to whether an impermissible factor such as race motivated the employer's adverse employment decision. *Diamond*, 416 F.3d at 318. Pursuant to the 1991 Act, the impermissible factor need not have been the sole factor. As long as it motivated the adverse action, the plaintiff can establish an unlawful employment practice. *See* 42 U.S.C.A. § 2000e-2(m). Alternatively, a plaintiff may "proceed under [the *McDonnell Douglas* ] 'pretext' framework, under which the employee, after establishing a prima facie case of discrimination, demonstrates that the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination." *Hill*, 354 F.3d at 285. The plaintiff does not attempt to establish her discrimination claim using direct or circumstantial evidence but relies implicitly on the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) burden-shifting proof scheme.

Under *McDonnell Douglas*, an employee must first prove a *prima facie* case of discrimination by a preponderance of the evidence. If she succeeds, the employer has an opportunity to present a legitimate, nondiscriminatory reason for its employment action. If the employer does so, the presumption of unlawful discrimination created by the *prima facie* case drops out of the picture, and the burden shifts back to the employee to show that the given reason was just a pretext for discrimination. *See McDonnell Douglas*, 411 U.S. at 802-05.

In *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), the Supreme Court reiterated that evidence of pretext, combined with the plaintiff's prima facie case, does not compel judgment for the plaintiff, because " [i]t is not enough . . . to disbelieve the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination." *Id.* at 147 (citation omitted). However, the Court also stated that, under the appropriate circumstances, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Id.* It is the plaintiff's burden to create an inference that the defendant's proffered reason is a pretext for intentional discrimination. *See id.* at 147-48. Pretext analysis does not convert Title VII into a vehicle for challenging unfair--but nondiscriminatory--employment decisions. *Holder v. City of Raleigh*, 867 F.2d 823, 828 (4th Cir.1989). Conclusory allegations, without more, are insufficient to preclude the granting of the defendant's summary judgment motion. *Ross*, 759 F.2d at 365.

### A.    *Prima Facie* Case

The plaintiff can establish a *prima facie case* of discriminatory discharge under Title VII by showing: (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) at the time the employer took the adverse employment action, she was performing at a level that met her employer's legitimate expectations; and (4) the

position was filled by a similarly qualified applicant outside the protected class or other employees who are not members of the protected class were retained under apparently similar circumstances. *See Allen v. BMW Mfg. Co.*, LLC, 2008 WL 78741, at *1(4th Cir. January 8, 2008); *Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 188 (4th Cir.2004); King v. Rumsfeld, 328 F.3d 145, 149 (4th Cir. 2003); *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 607 (4th Cir.1999). The defendant contends that the plaintiff has not created any genuine issue of fact as to elements three and four.

Concerning whether the plaintiff was meeting the legitimate expectations of her employer, the defendant has produced evidence that, in August and November 2005, the defendant counseled the plaintiff orally and in writing regarding violations of various operating policies, of which she was aware. (Koester Decl. ¶ 9;Pl. Dep. at 133-34, 156, 170-71, 194, Ex. 4.) On August 9, 2005, Betty Jackson, a staff member under the plaintiff's supervision, called the defendant's workplace alert line to report her belief that the plaintiff had been stealing cash since March 2005. (Koester Decl. ¶ 7, Ex. 2.) Specifically, Jackson reported that the plaintiff had been keeping "extra cash" in a money bag in the store safe. *Id*. Ex. 2. Jackson had observed the money in the safe in March 2005, but after a Teresa Tutton, had transferred to the store as Assistant Manager, the "extra cash" in the money bag had disappeared. *Id*. Jackson believed that the plaintiff had stolen the money to get rid of it before Tutton's transfer. *Id*.

Pursuant to Family Dollar's "Cash Management" policy, the plaintiff was ultimately responsible for accurately maintaining the petty cash fund. (Pl. Dep. at 42-47; Koester Decl. ¶ 10, Ex. 4.] The fund was supposed to remain at the same level daily – $700 for the plaintiff's store – and was to be used for operating cash. *Id*. Each morning, the plaintiff or one of the other managers was required to count the money in petty cash and record the amount on the Petty Cash Log ("Log") in the plaintiff's office. The Log was supposed to be an accurate account of the petty cash fund. Anytime the fund contained more than $700,

Goodman was to deposit the overage in the bank, note the overage on the Log, and notifiy her District Manager. *Id*.

The defendant has put forward evidence that on August 25, 2005, Koester and Loss Prevention Director Pete Hohlwein went to Store #4818 to investigate Jackson's complaint. The defendant contends that the plaintiff admitted she had been maintaining a "slush fund" from cash register overages that she used to cover unexplained shortages in the cash registers when they occurred rather than investigating the discrepancies and taking appropriate disciplinary action. (Koester Decl. ¶ 8, Ex. 3.) The defendant alleges that the plaintiff had been hiding the "slush fund" by falsifying the Petty Cash Log. For example, on August 25, 2005, the plaintiff had recorded $700 in petty cash when in fact there was $718. (Id.; Pl. Dep. at 193-94, Ex. 10.)

The defendant also claims that the plaintiff kept "Susan B. Anthony dollar coins" in the petty cash bag. (Koester Decl. ¶ 9; Pl. Dep. at 133-34.) The plaintiff allegedly told Koester she intended to purchase the coins in the future. *Id*. The defendant represents that Koester orally counseled the plaintiff that maintenance of a "slush fund" was unacceptable, that the Log was to reflect the actual amount in petty cash, and that the petty cash fund had to contain cash that could be used for change, and therefore, the plaintiff could not keep the dollar coins as part of petty cash. (Id; Pl. Dep. at 133-34, 194.]

On October 12, 2005, an anonymous call was placed to Family Dollar's workplace alert line reporting once again that the plaintiff improperly handled store cash. (Koester Decl. ¶ 11, Exs. 5-7; Pl. Dep. at 157-59, 162, 164-67.] Koester received notice of the call on October 13, 2005. Before she had a chance to visit the store to investigate the report, Koester received notification from the Cash and Sales Auditor that Store #4818 had a shortage of $220.53 on Thursday, October 20, 2005. (Koester Decl. ¶ 12, Exs. 5-7.)

Koester went to Store #4818 to investigate the shortage and the anonymous complaint. When Koester asked the plaintiff to explain the missing cash, the plaintiff said

7

she should not be held responsible because she was off for two days – Monday and Tuesday – and when she returned on Wednesday morning to prepare the deposit, the money was missing. (Pl. Dep. 157-59.) The defendant rejects the plaintiff's representation that she was not at work on October 20. (Koester Decl. ¶¶ 14-15, Exs. 8-9.)

The defendant alleges that, following its investigation, Koester counseled the plaintiff, on November 10, 2005, in writing for violating company policies on cash handling. (Koester decl. at ¶¶ 16-17, Ex. 10.) Koester warned the plaintiff that any further violation of Company policy would result in the termination of her employment. (Koester Decl. at ¶¶ 16-17.) The plaintiff commented on the written counseling form that she would try to improve and "[f]rom now on I will follow the policy of this company and read all 4 books so I want [sic] go wrong." (Pl. Dep. at 156, 170-71, Ex. 4; Koester Decl. ¶¶ 16-17, Ex. 10.]

On December 12, 2005, Glendora Jones (African-American), filed a complaint with the Human Resources Service Center stating that Goodman was retaliating against her by reducing her work hours because Jones had sold merchandise to customers that Goodman had been holding in the back room to purchase for herself. (Koester Decl. ¶ 18, Ex. 11; Pl. Dep. at 141-42.)

On December 13, 2005, Koester went to Store #4818 to discuss Jones' allegations with the plaintiff. During their conversation, the plaintiff admitted that she had been holding merchandise for personal purchase. (Pl. Dep. at 87, 89, 101-02; Koester Decl. ¶ 19, Ex. 12.) The defendant's employee handbook expressly states that an employee's job may be terminated if they "**hold[] store merchandise in the stockroom, office or cash register area for later purchase**." (Pl. Dep. Ex. 3 (emphasis added).) Plaintiff does not dispute that she violated this policy. Given the repeated policy violations and based on the fact that the plaintiff had been given a final warning on November 10, Koester terminated the plaintiff's employment. *Id.*

The plaintiff generally rejects that she was "counseled" on the occasions, prior to the time of her termination, as alleged. (Pl. Resp. at 4, 7.)[1] She argues that no Performance Improvement Action Plans ("PIP") were ever prepared. *Id*. The Court would note that the defendant has submitted at least one PIP, dated November 10, 2005. (Pl. Dep., Ex. 4.) The plaintiff also claims to have no knowledge of a "slush fund" or even what a slush fund is. (Pl. Dep. at 170.) In fact, she claims that she was completely unaware of the complaints called-in against her until the defendant's motion for summary judgment. *Id*. Of course, whether she has knowledge that a complaint call was made to the alert line is not relevant to whether or not she concedes that she was counseled for the reasons alleged by the defendant.

In that regard, the plaintiff does at least admit that she was "corrected" regarding the petty cash matter. (Pl. Dep. 194.) The plaintiff further concedes that Koester specifically warned her that one more violation of any kind would result in the termination of her employment, necessarily suggesting that previous violations had been brought to the plaintiff's attention. (Koester Decl. ¶ 17; Pl. Dep. at 170-71.) Critically, notwithstanding this warning, the plaintiff unequivocally admits that she held merchandise for her personal purchase in violation of company policy. (Koester Decl. ¶ 19; Pl. Dep. at 101-02, 143.)

Accordingly, whatever issues of fact exist surrounding prior attempts by the defendant to counsel the plaintiff and the propriety of such attempts, she has admitted, in the least, that (1) she was "corrected" regarding petty cash; (2) was warned that any additional policy violations would result in the termination of her employment; and (3) she did, in fact, hold merchandise for her own personal purchase, in violation of company policy. These three undisputed facts, alone, eliminate any issues of fact as to whether the plaintiff was meeting the defendant's legitimate performance expectations; she was not.

---

[1] The plaintiff has submitted an affidavit/verification page with her response. (Pl. Resp. Ex. 4.) The Court, therefore, has treated the plaintiff's response as a sworn statement.

Moreover, the issue is not whether the termination of the plaintiff was "wise, fair or *correct*,' but whether [the defendant] honestly believed those reasons and acted in good faith upon those beliefs.'" *Kaster v. Safeco Ins. Co. Of Am.*, 212 F. Supp. 2d 1264, 1274 (D. Kan. 2002) (emphasis added). The plaintiff has not produced any evidence from which a jury could conclude that the defendant did not honestly believe that she had violated company policy on the occasions alleged, regardless of whether or not she did. *See Brown v. Conopco, Inc.*, 2007 WL 3224586, at *8 (D. Md. October 24 2007) ("What matters is that Unilever honestly believed she was, and believed Mr. Brown had fraudulently claimed the day as FMLA leave when in fact it was not being used for that purpose."); *Waggoner v. City of Garland*, 987 F.2d 1160, 1156-66 (1993) ("[T]he inquiry is limited to whether the employer believed the allegation in good faith and whether the decision to discharge the employee was based on that belief.").

Even to the extent the plaintiff could create a genuine issue of fact as to whether her performance was meeting the defendant's legitimate expectations, she has produced no evidence that other employees outside of the protected class were retained under similar circumstances. *See Allen*, 2008 WL 78741, at *1; *Honor,* 383 F.3d at 188. The defendant has put forward evidence that Koester terminated the employment of two other employees for violating Company policy – Tracy Cunningham (African-American) and Earl Davis (white). (Chidester Decl. ¶ 3.) Since January 2000, Family Dollar has discharged seven white employees and two African-American employees, including the plaintiff, for violating various Company policies. (Chidester decl. at ¶ 3.)

In contrast, the plaintiff has not put forward the name of any white employee, similarly situated, whose employment was not terminated.[2] At her deposition, the plaintiff

---

[2] The plaintiff has stated that three other unnamed people, working under her supervision and at her direction, held merchandise as well. (Pl. Dep. at143.) She has not put forward any evidence as to their race. More importantly, those individuals are not similarly situated to the plaintiff, who was the store manager.

10

admitted that she is not aware of any other employees who have violated a Company policy or who have held merchandise, and were not fired. (Pl. Dep. at 87, 89, 101-02.) Specifically, she was asked, "Is there, sitting here today, any person you know of who worked for Family Dollar and violated a Family Dollar company policy?" (Pl. Dep. at 89.) She responded, "No." *Id*. Although the plaintiff told Koester during the discharge meeting that employees "nationwide" held merchandise, she was referring to employees at other companies, as revealed by her deposition testimony.

> Q. Did you give her the names of anybody else who held merchandise?
>
> A. Not at the time. I don't believe I did.
>
> Q. Did she ask you for those people's names?
>
> A. Not that I know of. I just told her it was nationwide.
>
> Q. How do you know it's nationwide?
>
> A. You see that all over T.V. You go to K-Mart and some of their employees hold merchandise.
>
> Q. So that is what you were telling her when you said that?
>
> A. Yes. Correct. And from the experience when I worked at Rose's. The employees held merchandise until it was time for them to get paid. When I worked at Upton's, they did the same thing, I didn't see no difference.
>
> Q. Was that the whole conversation?
>
> A. To me it was, yes. Because I got my keys and went up to - got my pocketbook.

(Pl. Dep. at 101-02.) In her response to summary judgment, the plaintiff has not attempted to identify any white employee treated differently than herself. Accordingly, the plaintiff has failed to create any genuine issue of fact as to the fourth element of her *prima facie* case.

Assuming *arguendo* that the plaintiff could make out a *prima facie* case of discrimination, she has not produced any evidence to rebut the defendant's legitimate, non-discriminatory reason for her termination.

### B.     Legitimate Non-Discriminatory Reason

The defendant has met its burden of production by generally identifying the following legitimate, non-discriminatory reason for terminating the plaintiff's employment:  violation of various company policies, including a prohibition against holding store merchandise for personal purchase.  *See Asuncion v. Southland Corp.*, 1998 WL 71529, (4th Cir. February 23, 1998) ("Southland articulated a legitimate, nondiscriminatory reason for firing Asuncion: that Ritenour, the market manager who made the decision to terminate Asuncion, reasonably believed that Asuncion required an employee to pay back cash register shortages in violation of Southland's company policy against such practices."); *Dawson v. U.S.*, 2008 WL 650438, at *12 (D.S.C. March 05, 2008) ("Defendants have articulated legitimate, non-discriminatory reasons for Dawson's suspension and demotion, i.e., the investigations by OPR and the review of Administrative Services which determined that she violated FBI policy by using a derogatory term to describe LaCotti.").  "Job performance and relative employee qualifications [are] widely recognized as valid, non-discriminatory bas[i]s for any adverse employment decision."  *Evans v. Technologies Applications & Service Co.*, 80 F.3d 954, 960 (4th Cir. 1996); *see also Mackey v. Shalala*, 360 F.3d 463, 468 (4th Cir. 2004); *Karpel v. Inova Health System Services*, 134 F.3d 1222, 1229 (4th Cir. 1998) ("Inova's termination of Karpel was based on her unsatisfactory job performance, including, her tardiness and failure to complete her monthly summaries.")

### C.     Pretext

Because the defendant has proffered legitimate, non-discriminatory reasons for its actions, the plaintiff bears the burden of demonstrating that the real reason for denial of the promotion was, in fact, an unlawful one.  *See Reeves*, 530 U.S. at 142-43.   The plaintiff implicitly attempts to satisfy this burden by suggesting that the defendant's proffered reasons are pretextual or false.  *See id.* at 144.  As stated, however, there is simply no dispute between the parties as to whether the plaintiff was holding merchandise for

purchase; she was. (Koester Decl. at ¶ 19; Pl. Dep. at 101-02, 143.) Under the defendant's policies, this a terminable offense. (Pl. Dep., Ex. 3.) Moreover, the plaintiff has conceded that she was "corrected" on at least one prior occasion regarding the petty cash fund. Accordingly, the plaintiff has produced no evidence from which a reasonable jury could conclude that the defendant's stated reasons for termination were, in fact, pretext for racial discrimination.

Lastly, the Court would note that the plaintiff has testified that she does not believe she was terminated on account of her race. At her deposition, she was asked "Do you think it's [termination] because of your race?" and the plaintiff responded, "No, I don't." (Pl. Dep. at 145.) In her response to summary judgment the plaintiff contends that this answer is a mistake in the transcript and that she was not able to correct it. (Pl. Resp. at 2.) The Court, however, specifically notified the plaintiff of her right to review the transcript and prepare an errata sheet, in its Order, dated on February 26, 2006. [Doc. 155.] The plaintiff has not submitted any errata sheet or corrected version of the deposition transcript. Nor does the Court imagine that she could in regards to this particular answer. For the reporter to have made an error in the transcription regarding this answer, he or she would have had to have wrongly typed both "no" when the plaintiff said, "yes" and "I don't" when the plaintiff said, "I do." This seems highly unlikely and cannot be accepted by the Court, when the plaintiff had on opportunity to correct the transcript of her deposition and verify such correction and yet chose not to do so. It would appear, therefore, that by the plaintiff's own admission she does not genuinely believe that her termination was on account of her race. No reasonable jury, in the face of such an admissible concession, and in light of the lack of evidence proffered pursuant to the *McDonnell Douglas* proof scheme, could ever find in her favor.

13

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, it is RECOMMENDED that the defendant's motion for summary judgment [Doc. 116] should be GRANTED.

              s/Bruce H. Hendricks
              United States Magistrate Judge

May 7, 2008
Greenville, South Carolina

**The plaintiff's attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail.  Fed. R. Civ. P. 6(a) & (e).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 10768
Greenville, South Carolina 29603

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).